TARSNEY v. BOARD OF EDUCATION OF CITY OF DETROIT.[1]

1. STATUTES — SUBJECTS AND TITLES — DETROIT CORPORATION COUNSEL.
   . Act No. 389, Local Acts 1895, entitled "An act to provide for a law department for the city of Detroit," when construed as imposing upon the corporation counsel the duty of representing the board of education of the city, is not unconstitutional as embracing matter broader than its title, when it is borne in mind that the school district is coextensive with the city limits, that several city officers are ex officio members of the board, and that the mayor of the city has power to veto the proceedings of the board.

2. MUNICIPAL CORPORATIONS — DETROIT CHARTER — OFFICERS— CORPORATION COUNSEL—DUTY TO REPRESENT BOARD OF EDUCATION.
   Act No. 389, Local Acts 1895, establishing a law department for the city of Detroit, and requiring the corporation counsel to furnish every department, officer, and board such advice or legal assistance, as counsel or attorney "in or out of court" as may be required, is broad enough to apply to a case in court in which the corporation counsel represented the board of education at its request, though the board was not a party to the suit, and could not be made a party against its will.

3. SAME—BOARD OF EDUCATION—POWER TO CONTRACT.
   The board of education of Detroit had not such an interest in the outcome of the suits by certain railroad companies against the auditor general to establish the invalidity of Act No 173, Pub. Acts 1901, providing for the taxation of the property of railroads at the same rate borne by other property, as empowered it to employ counsel to represent it in court in such suits, the interest of the inhabitants of the school district of the city not being other than as taxpayers of the city.

Certiorari to Wayne; Murphy, Brooke, and Hosmer, JJ. Submitted February 19, 1907. (Calendar No. 21,998.) Decided March 5, 1907.

[1] Rehearing denied July 15, 1907.

Mandamus by Timothy E. Tarsney to compel the board of education of the city of Detroit to audit a claim for services rendered. There was an order denying the writ, and relator brings certiorari. Affirmed.

*Timothy E. Tarsney,* in pro. per.

*H. E. Spalding,* for respondent.

MONTGOMERY, J. This is certiorari to review the action of the circuit court of Wayne county in refusing to grant a mandamus. The statement of the facts and the conclusions of law which are embodied in the opinion of Judge Brooke, concurred in by Judges Murphy and Hosmer, are so satisfactory that we adopt the language employed:

"The application by the relator was for a writ of mandamus to compel the board of education of the city of Detroit to audit a bill presented by the relator to the respondent for the sum of $25,000 for services rendered by the relator for the respondent. The facts of the case, about which there is no dispute, appear to be briefly as follows:

"The relator is the city counselor of the city of Detroit and has held that office for many years. On May 14, 1903, the board of education adopted the following resolution:

"'*Resolved,* that the board of education of the city of Detroit hereby retain Timothy E. Tarsney, P J. M. Hally and Albert B. Hall for the purpose of representing the board in the case of the *Chicago, St. Paul & Milwaukee Railway Company* v. *Perry F. Powers, Auditor General,* and such other cases in the United States courts, wherein the validity of Act No 173 of 1901 is attacked, and agrees to pay them such reasonable compensation as their professional services may be worth.

"' In contracting for such services it is expressly understood that the present board or its successors may at any time discontinue said services, and the said attorneys are to be paid only up to the time of said discharge'

"Under the resolution of May 14, 1903, the relator performed certain services for the board of education of the city of Detroit. * * * It appears that Act No. 173 of

the Public Acts of 1901, the validity of which was being attacked in the United States court for the western district of Michigan, provided for a method of taxation of railway properties within the State of Michigan which the railway companies were endeavoring to have held invalid. Under the act in question a very much larger sum would be realized annually as taxes from the various railroad companies than were collectible under the law prior to the passage of the act in question. These moneys, when collected by the proper State officer, became a portion of the primary school fund. Every taxpayer in Michigan, therefore, except the railway companies, was interested in sustaining the law in question, because all property subject to taxation is liable to pay its proportion of the school tax necessary for the maintenance of the public school system in the State.   *   *   *

"The law department of the city of Detroit was created by an act approved May 4, 1895 [Act No. 389, Local Acts 1895], entitled, 'An act to provide for a law department for the city of Detroit, to abolish the offices of city counselor and city attorney, and to repeal Act No. 419 of the Local Acts of 1893, entitled, "An act supplemental to the charter of the city of Detroit and to provide for a law department in said city,"' approved June 1, 1893.

"The act [§§ 5, 10] creating a law department contains the following, among other provisions:

"'The corporation counsel shall be the head of the department of law and he shall superintend and conduct all the law business of the city and its departments, conduct all suits brought by or against the city or any board thereof, except the board of police commissioners.   *   *   *

"'No officer, department, municipal board,   *   *   *   including the board of education of the city of Detroit, shall have or employ any attorney or counsel unless upon the recommendation of the corporation counsel, but it shall be the duty of the law department to furnish to every department, officer, and municipal board such advice or legal assistance, as counsel or attorney in or out of court, as may be required by such officer, department or board.'

"There is no disputed question of fact raised either by the pleadings or proofs in the case. Two legal questions are raised. The first question is whether or not under the act creating the legal department for the city of Detroit the corporation counsel was bound to render to the board of education such legal services either 'in or out of court'

as the board of education might require without compensation other than that provided for in the act itself. If this is answered in the affirmative, nothing remains of the case. If, however, this question should be answered in the negative, there still remains the legal question whether or not the board of education of the city of Detroit had the legal power to enter into a contract with the relator involving the expenditure of public moneys in its hands for the purpose of having the respondent assist the attorney general in defending' the suits brought against the State by the various railroad companies for the purpose of invalidating a general statute of the State.

"We think that the first of these questions must be answered contrary to the contention of relator. Prior to the passage of the law department act of 1895 the board of education employed its own attorney. Other boards likewise employed individual attorneys to represent their interests. In September, 1897, the corporation counsel notified the board of education that he 'was prepared to attend to all the legal duties of the board, and would arrange to have one of his assistants attend all board meetings and meetings of any committee where his presence was required.' Since that time up to the present time the board of education of the city of Detroit has not had a separate attorney, but has received such legal assistance as it required from the corporation counsel. A careful reading of the provisions of the law department act leads to the conclusion that it was the intention of the legislature to abolish the system then in vogue in the city of Detroit of permitting each board to conduct its law business through separate counsel. Provision was made for the payment of an adequate salary to the corporation counsel, and for the employment of a considerable corps of assistants, who are likewise paid adequate compensation. There is no doubt in the mind of the court that section 357, above quoted, clearly intended to impose upon the corporation counsel the duty to furnish to the board of education such legal advice, either in or out of court, of which it might thereafter find itself in need. The practical construction given this section by the corporation counsel himself and his predecessor, while not conclusive, lends weight to this view. Nearly 10 years have passed since the legal affairs of the board of education have been taken over by the corporation counsel, and no question of this kind has been raised heretofore, and the

corporation counsel himself during the argument of the case averred his entire willingness to continue to represent the board as occasion might require during his tenure of the office.

"The relator raises two objections to this view of the case. He argues, first, that, if it was the intention of the legislature to impose the duty of representing the board of education upon the corporation counsel, that the act is unconstitutional, because it would then embrace matter broader than its title. With regard to this contention we can only say that we cannot agree with the relator. It will be borne in mind that the limits of the school district over which the board of education of the city of Detroit has control are coextensive with the limits of the city of Detroit itself. It will further be borne in mind that various officers of the municipality of the city of Detroit are themselves members ex officio of the board of education, and, further, that the mayor of the city of Detroit has power to veto the proceedings of the board of education. All these legislative provisions tend to show the intimate relation existing between the board of education and the municipality itself, and while, perhaps, it may be a misnomer to call the board of education a municipal board, yet, nevertheless, in view of the various legislative provisions before adverted to, we have no doubt that in passing the act in question relating to the law department the board of education was so considered.

"The next objection raised by the relator is that, even though the act is constitutional, he would not be compelled to represent the board of education because the matter in which the resolution endeavored to employ him was one in which the board of education could not, by its own volition, become a party, nor could it be made a party thereto against its will. Therefore, he argues, this being outside any duty imposed upon him by the statute, presuming its constitutionality, he is entitled to recover pay for the same under the resolution of employment. We think that the language, 'either in or out of court,' is sufficient to cover all services of a legal character.

"We next come to consider the question of the legal power of the board of education to enter into the contract upon which the relator relies. It will be remembered that the suits in which the relator's services were engaged were suits brought against the auditor general of the State, and were defended by the State through its proper officer,

the attorney general.   There is statutory provision empowering the State to employ further counsel if necessity arises; but nowhere is there any authority which permits an individual or a corporate body within the State to interfere in litigation wherein the State is a defendant.   It is true, as argued by the relator, that the citizens of Detroit (not the board of education) were vitally interested in the maintenance of the validity of the act in question in that case.   The interest of the citizens of Detroit was not as residents of a particular school district, but as taxpayers having property liable to taxation within the corporate limits of the city of Detroit, which happen to be coextensive with the limits of the school district under the control of the board of education.   Should the validity of the act be sustained, the tax for school purposes within the city of Detroit would be less.   Should the act be held invalid, the taxes would be more.   The board of education as such had absolutely no interest in the question at all.   If it, as a board, had had an interest indirectly, still in our opinion it would not have the power to expend public moneys for the purposes indicated by the resolution, but, as we have pointed out, we believe the interest, indirect as it was, was not the interest of the board of education, but of the taxpayers of the city of Detroit."

The decision of the court below was clearly right, and stands affirmed.

MCALVAY, C. J., and OSTRANDER, HOOKER, and MOORE, JJ., concurred.